UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MERCEDES ROURKE-RODRIGUEZ, and
ARIWIIO SWAMP,

                               Plaintiffs,

         v.                                              8:25-CV-738 (AJB/DJS)

UNITED STATES DEPARTMENT OF
EDUCATION, and LINDA MCMAHON, in her
official capacity as Secretary, United States
Department of Education

                               Defendants.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

**I.    INTRODUCTION**

On June 10, 2025, plaintiffs Mercedes Rourke-Rodriguez ("Rourke-Rodriguez") and Ariwiio Swamp ("Swamp") filed this action against the Department of Education (the "Department") and Linda McMahon, in her official capacity as Secretary of the Department of Education, pursuant to the Administrative Procedure Act ("APA"). Dkt. No. 1. Broadly, plaintiffs allege that the Department violated the APA by implementing a new policy, without justification, requiring American Indian students born in Canada to submit documentation of their immigration status as a precondition to receiving federal student aid under Title IV of the Higher Education Act. Dkt. No. 1 ¶¶ 1–6. Along with their complaint, plaintiffs sought emergency relief from enforcement of the new policy. Dkt. No. 2.

On June 11, 2025, the Court denied plaintiffs' emergency application in part. Dkt. No. 5. Although the Court declined to issue a temporary restraining order, plaintiffs were ordered to serve the operative complaint and motion papers on defendants on an expedited basis. Dkt. No.

5.  The Court held a video conference and then set a briefing schedule on plaintiffs' request for a preliminary injunction. Dkt. No. 11.

On July 11, 2025, defendants opposed plaintiffs' motion for injunctive relief and cross-moved to dismiss the action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). Dkt. No. 12. After the cross-motions were briefed, plaintiffs moved for leave to amend their complaint to add a proposed new plaintiff, Jayla Thompson ("Thompson"). Dkt. No. 16. Defendants initially moved by letter motion to strike plaintiffs' motion for leave to amend, Dkt. No. 18, but after plaintiffs opposed defendants' motion to strike, Dkt. No. 19, defendants submitted a formal response in opposition to plaintiffs' motion for leave to amend, Dkt. No. 20.[1]

The outstanding motions (Dkt. Nos. 2, 12, 16, 18) will be considered on the basis of the submissions without oral argument.

## II.   BACKGROUND[2]

Plaintiffs Rourke-Rodriguez, Swamp, and Thompson are American Indians born in Canada. Dkt. No. 16-2 ("Prop. FAC") ¶¶ 1, 7–9. Plaintiffs each have "at least 50-percent Native American blood." Dkt. No. 16-2 ("Prop. FAC") ¶¶ 1, 7–9. All are members of the federally recognized Saint Regis Mohawk Tribe (the "Tribe"), and reside on the Tribe's reservation, which is located in Akwesasne, New York. The reservation is bisected by the Canada-United States border. *Id.* ¶¶ 1–2. As relevant here, plaintiffs are also "present or prospective college students . . . who need federal financial aid to attend college." *Id.* ¶ 1.

---

[1] Plaintiffs subsequently filed a reply to defendants' response. Dkt. No. 21.
[2] For reasons that will be explained *infra*, the following facts are taken primarily from plaintiffs' proposed first amended complaint.

Under Article III of the Jay Treaty of 1794, American Indians born in Canada have a right to freely cross the United States-Canada border. *See* Treaty of Amity, Commerce and Navigation ("Jay Treaty"), art. 3, Gr. Brit.-U.S., Nov. 19, 1794, 8 Stat. 118. This right to travel is codified in § 289 of the Immigration and Nationality Act, which exempts American Indians born in Canada who have at least 50-percent American Indian blood from standard immigration restrictions. 8 U.S.C. § 1359. Federal regulations adopted pursuant to the Immigration and Nationality Act provide that these individuals "shall be regarded as having been lawfully admitted for permanent residence." 8 C.F.R. § 289.2.

Put differently, American Indians born in Canada with at least 50-percent American Indian blood need not apply for documentation (*i.e.*, a "Green Card") to establish lawful permanent residence in the United States, as they are deemed permanent residents by statute. Prop. FAC ¶ 22.

As lawful permanent residents, American Indians born in Canada who attend college ("Jay Treaty students") are eligible for federal financial aid. *See* 20 U.S.C. § 1095(a)(5). Title IV of the Higher Education Act provides that, to receive federal student aid, a student must be:

> a citizen or national of the United States, *a permanent resident of the United States*, or able to provide evidence from the Immigration and Naturalization Service that he or she is in the United States for other than a temporary purpose with the intention of becoming a citizen or permanent resident.

*Id.* (emphasis added).

Individuals seeking financial aid under Title IV for a given award year must first file a Free Application for Federal Student Aid ("FAFSA"). 20 U.S.C. § 1090. Historically, Jay Treaty students were only required to obtain a Social Security Number to apply for aid. Prop. FAC ¶ 22. Indeed, the Federal Student Aid Handbook ("FSA Handbook") for the 2023–2024 award year explicitly stated that:

> Jay Treaty students . . . are not subject to the legal restrictions typically imposed on aliens by the DHS, are not required to obtain documentation from the DHS, and are considered 'lawfully admitted for permanent residence.' They must obtain a [Social Security Number] for purposes of applying for Title IV aid.

*Id.* (quoting FEDERAL STUDENT AID, U.S. DEP'T OF EDUC., 2023–2024 FEDERAL STUDENT AID HANDBOOK (2022)).

That changed on January 15, 2025, when Federal Student Aid, an office within the Department, posted an electronic notice (the "January 15 Notice") to its website, announcing "changes made to the acceptable documentation for American Indians born in Canada" after consultation with the Department of Homeland Security ("DHS"). Prop. FAC ¶ 24. The January 15 Notice outlines the updated policy as follows:

> If an American Indian born in Canada claiming Title IV eligibility under the Jay Treaty did not previously receive Title IV aid in the 2023–24 award year (or any prior award year) and is seeking to establish their status as an eligible noncitizen for the 2024-25 award year or later, then the student may submit any of the following immigration documentation to establish Title IV eligibility:
>
> - Form I-551 PRC with the code S13;
> - An unexpired temporary I-551 stamp with the code S13 in a Canadian passport; or
> - An unexpired temporary I-551 stamp with the code S13 on an I-94.

Prop. FAC ¶ 27.

One way to comply with the updated policy is to obtain a Form I-551 Permanent Resident Card ("PRC"), also known as a Green Card. The process to obtain a Green Card can be quite onerous. It requires Jay Treaty students to schedule and appear for an appointment at their local United States Citizenship and Immigration Services ("USCIS") office with the following materials:

- Two passport-style photos;
- A copy of a government-issued identity document with photograph;
- A copy of the student's long form Canadian birth certificate (to establish lineage to claimed tribal ancestors, as well as birth in Canada); and

- Documentation to establish membership, past or present, in each band or tribe for the student and every lineal ancestor (parents and grandparents) through whom the student derives the required percentage of American Indian blood. This documentation must come from the official tribal government or from Indian and Northern Affairs Canada.

Prop. FAC ¶ 30.

The other way Jay Treaty students can comply with the updated policy is by receiving an unexpired temporary I-551 stamp in a Canadian passport or on a Form I-94. *Id.* ¶ 27. To do so, the student must either apply for a Canadian passport through the Canadian government, or obtain a Form I-94—also known as an Arrival/Departure Record—from the U.S. Customs Port of Entry, and then file a request with USCIS for a temporary I-551 stamp. *Id.* ¶¶ 31–34.

But Jay Treaty students who received Title IV aid in the 2023–2024 award year or a prior award year may be eligible for an exemption from the new documentation requirement. Prop. FAC ¶ 26. To that end, the January 15 Notice provides that:

> If an American Indian born in Canada claiming Title IV eligibility under the Jay Treaty received Title IV aid in the 2023-24 award year (or any prior award year), then the institution may elect under 34 CFR 668.133(b) to not require such a student to submit additional immigration documentation to establish their title IV eligibility where the documents used to establish that eligibility have not expired, and where the institution does not have reason to believe that the student's claim of citizenship or immigration status is incorrect.

*Id.* Crucially, though, under this provision, even Jay Treaty students that previously received Title IV aid are subject to the new documentation requirement unless their educational institution affirmatively exempts them. *Id.*

### III. DISCUSSION

Plaintiffs allege that the Department imposed its new documentation requirement without justification, in violation of § 706(2) of the APA, and that the Department's updated policy unlawfully interferes with their legally protected interest, as Jay Treaty students, in receiving federal student aid under Title IV of the Higher Education Act. Prop. FAC ¶ 6.

As noted *supra*, the outstanding motions include (1) plaintiffs' emergency motion for a preliminary injunction, Dkt. No. 2; (2) defendants' cross-motion to dismiss for lack of subject matter jurisdiction, Dkt. No. 12; (3) plaintiffs' motion for leave to amend their complaint, Dkt. No. 16; and (4) defendants' letter motion to strike plaintiffs' motion to amend, Dkt. No. 18.

Because federal courts "must independently verify the existence of subject-matter jurisdiction before proceeding to the merits," *Singh v. U.S. Citizenship and Immigr. Servs.*, 878 F.3d 441, 445 (2d Cir. 2017), *as amended* (Jan. 9, 2018), the Court will first address defendants' 12(b)(1) motion to determine whether it has jurisdiction to entertain the remaining motions.

### A. Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendants moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(1), arguing that, "[t]he complete absence of any injury or showing that the [new policy] has or *will ever* prevent [p]laintiffs from obtaining student aid is fatal to the Court's jurisdiction." Dkt. No. 12-1 ("Defs.' Mem.") at 4 (emphasis in original). In opposition, plaintiffs maintain that "the Court has jurisdiction over this matter." Dkt. No. 13 ("Pl.'s Opp.") at 5.

Given that plaintiffs moved for leave to amend their complaint while defendants' motion to dismiss was pending, the Court will consider defendants' motion in light of plaintiffs' proposed amended complaint. *See Pettaway v. Natl. Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) ("[W]hen faced with an amended complaint, [courts] may either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading.").

#### 1. Legal Standard

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory

or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id.*

"A Rule 12(b)(1) motion . . . may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "When [a] Rule 12(b)(1) motion is facial, [it is] based solely on the allegations of the complaint . . . and [any] exhibits attached to it." *Id.* at 57. "Alternatively, a defendant [may] make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* Here, defendants have brought a fact-based Rule 12(b)(1) motion. *See* Dkt. Nos. 12-2–12-5.

In opposition to a fact-based 12(b)(1) motion, "plaintiffs must 'come forward with evidence of their own to controvert that presented by the defendant' . . . or [they] may instead 'rely on the allegations in the [p]leading[,] if the evidence proffered by the defendant . . . does not contradict plausible allegations that are themselves sufficient to show standing.'" *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 56). Plaintiffs have taken the latter approach. Pl.'s Opp. at 5–6.

2. **Analysis**

Defendants contend that plaintiffs have failed to allege a concrete and particularized injury that is actual or imminent, and, thus, cannot meet the requirements for standing or ripeness. Defs.' Mem. at 22–27. Plaintiffs disagree. *See generally* Pl.'s Opp.

"[T]o survive . . . defendants['] Rule 12(b)(1) motion to dismiss, [plaintiffs] must allege facts that affirmatively and plausibly suggest that [they have] standing to sue." *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (citing *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). Article III standing is comprised of three elements:

> (1) "[T]he plaintiff must have suffered an injury in fact," . . . "which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Natl. Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

As relevant here, "[r]ipeness overlaps . . . with standing . . . in the shared requirement that the [plaintiff's] injury be imminent rather than conjectural or hypothetical . . . and courts at times use either term to refer to this requirement." *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 492 F.3d 89, 111 (2d Cir. 2007); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (considering ripeness arguments in terms of "standing"); *Sexton v. Medicare*, 194 F. Supp. 3d 209, 215 (E.D.N.Y. 2016) (same); *see also Jeannot v. New York State*, 762 F. Supp. 3d 217, 225 (E.D.N.Y. 2025) (considering standing and ripeness arguments together where both concerned imminence of alleged injury), *appeal withdrawn sub nom. Jeannot v. McDonald*, 2025 WL 2320485 (2d Cir. July 14, 2025); *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 526 (E.D.N.Y. 2013) (same), *aff'd,* 548 Fed. Appx. 741 (2d Cir. 2014) (summary order); *Open Socy. J. Initiative v. Trump*, 510 F. Supp. 3d 198, 208 (S.D.N.Y. 2021) (same).

Defendants' ripeness arguments fall squarely within this overlap. *See* Defs.' Mem. at 27 ("Plaintiffs' claims are not ripe for the same reasons that [p]laintiffs lack standing—they cannot show actual injury."). Accordingly, the Court will address defendants' ripeness arguments in terms of standing.

### i. Standing

Although defendants contest the sufficiency of the pleading as to all three elements of standing (*i.e.*, injury in fact, causation, and redressability), defendants primarily argue that

plaintiffs have not plausibly alleged the first element—*i.e.*, that plaintiffs have suffered, or will imminently suffer, an injury in fact—because plaintiffs do not claim that they have been forced to comply with the updated policy, and any allegations that they will be forced to comply with the updated policy are speculative. Defs.' Mem. at 22–26. In opposition, plaintiffs maintain that, as Jay Treaty students, they will be required to comply with updated policy. Pl.'s Opp. at 9.

At the pleading stage, a plaintiff must allege an injury "that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 180 (2000).

Defendants contend that the proposed amended pleading does not satisfy this requirement, in part, because plaintiffs have not alleged that they have been forced to comply with the updated policy's documentation requirement. Defs.' Mem. at 22.

However, plaintiffs do not need to allege that they have already been injured by the challenged policy to satisfy the injury in fact requirement. *Susan B. Anthony List*, 573 U.S. at 158 ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 n.5 (2013)).

Next, defendants argue that plaintiffs have not plausibly alleged a certainly impending future injury, because the proposed amended pleading does not indicate "whether [plaintiffs] have . . . been admitted to any academic institution for which they could receive student aid in the 2025[–20]26 award year." Defs.' Mem. at 13.[3] The Court agrees.

---

[3] The proposed amended pleading similarly lacks any allegation that plaintiffs applied for federal student aid for the 2025–2026 award year. *See generally* Prop. FAC.

Although plaintiffs have implied in subsequent filings that they have been admitted to academic institutions for the 2025–2026 award year, *see* Dkt. No. 19 at 2, and defendants themselves have adduced proof that plaintiffs Rourke-Rodriguez and Swamp applied for federal student aid for the 2025–2026 school year, *see* Dkt. No. 12-2 ("Musser Aff.") ¶¶ 18, 20, "[i]t is the responsibility of the complainant . . . to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Here, plaintiffs have failed to do so.

Lastly, defendants argue that any allegedly impending injury is speculative, because plaintiffs "fall within the category of students that may be" exempted from the new requirement, because they "received student aid *prior* to the upcoming 2025-26 academic year." Defs.' Mem. at 24 (emphasis in original). Though plaintiffs do not deny receiving aid in prior years, they argue that, under the January 15 Notice, they will not be exempted from the updated policy *unless* the following three conditions are met:

> (1) the documents previously used to establish their [T]itle IV eligibility have not expired, (2) their college does not have reason to believe that the student's claim of citizenship or immigration status is incorrect, and (3) their college "elect[s]" to not require the student to submit additional immigration documentation.

Pl.'s Opp. at 9. In reply, defendants maintain that plaintiffs have failed to affirmatively allege standing, because "the proposed amended complaint . . . does not allege that [p]laintiffs (including the proposed new plaintiff) . . . are ineligible for the exemption." *See* Dkt No. 20 at 7.

Defendants' argument overstates the pleading burden. While a "theory of standing" that "relies on a highly attenuated chain of possibilities, does not satisfy the requirement that [a] threatened injury must be certainly impending," *Clapper*, 568 U.S. at 410, "[i]njury in fact is a low threshold, which . . . 'need not be capable of sustaining a valid cause of action,' but 'may

simply be the fear or anxiety of future harm.'" *Ross v. Bank of Am., N.A.(USA)*, 524 F.3d 217, 222 (2d Cir. 2008) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)).

By its terms, the updated policy applies to all Jay Treaty students, even those who previously received aid, like plaintiffs. *See* Prop. FAC at ¶ 26. The exemption provision does not, itself, exempt plaintiffs from the updated policy, rather, it indicates that plaintiffs may be considered for an exemption under the conditions stated above. *Id.*

The Court rejects defendants' traceability and redressability arguments, see Defs.' Mem. at 25–28, for largely the same reasons. Where, as here, plaintiffs are the "object" of the Department's policy, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561–62 (1992).[4]

This is not to say that the exemption provision could *never* impact the justiciability of plaintiffs' claims. "The case-or-controversy limitation on our jurisdiction . . . manifests in three distinct legal inquiries: standing, mootness, and ripeness." *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 221 (2d Cir. 2018). "While standing doctrine determines whether a plaintiff has a personal stake in the litigation when the complaint is filed, mootness doctrine determines what to do if an intervening circumstance deprives the plaintiff of a personal

---

[4] The Court similarly rejects defendants' argument that plaintiffs have not plausibly alleged that their claimed injury —*i.e.*, the denial of federal student aid— is fairly traceable to the updated policy, because plaintiffs do not allege that they would otherwise be entitled to receive federal student aid. Defs.' Mem. at 13. As defendants point out, the Higher Education Act places a number of additional conditions and need-based criteria on the receipt of Title IV aid. *See* 20 U.S.C. § 1091(a)(2) (maintenance of satisfactory progress in course of study); 20 U.S.C. § 1091(a)(3) (not in default on any existing Title IV loan obligations); 20 U.S.C. § 1091 (b)(3) (attending school at least half-time); *see also* 20 U.S.C. § 1070a (placing income limitations on Pell Grants).

However, "[a] plaintiff is not required to show that a statute is the sole or . . . but-for cause of an injury." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019). After all, "[t]he point of a standing inquiry is not to figure out whether a plaintiff will likely achieve a desired result. The point is simply to ensure that a plaintiff has a sufficient nexus to the challenged action in the form of a personal stake in the litigation." *Id.* And, in any event, defendants have proffered evidence that plaintiffs Rourke-Rodriguez and Swamp were awarded Title IV aid as recently as the 2024–2025 award year. Musser Aff. ¶¶ 17, 19.

stake in the outcome of the lawsuit, at any point during litigation after its initiation." *Doe v. McDonald*, 128 F.4th 379, 384 (2d Cir. 2025).

In other words, "[t]he consequences of losing a stake in ongoing litigation are determined not by asking whether the party losing its stake in the litigation has lost its *standing* but by asking whether the action has become *moot*." *Klein o/b/o Qlik Techs., Inc.*, 906 F.3d 215, 220–21 (2d Cir. 2018) (emphasis in original).

Plaintiffs would lose their personal stake in the ongoing litigation if they were granted an exemption from the updated policy, as they would no longer face imminent enforcement of the regulation. Under those circumstances, their claims would be rendered moot.

In any event, the Court finds that the proposed amended pleading is deficient. "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990). Plaintiffs have not affirmatively and plausibly alleged standing, as they have not alleged that they are enrolled in an educational program for the 2025–2026 award year, or that they have applied for federal student aid for the 2025–2026 award year. *See generally* Prop. FAC. Accordingly, defendants' motion to dismiss must be granted.

Even so, plaintiffs should be granted leave to amend. Under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. The Second Circuit has repeatedly held that "such amendments will be freely permitted where necessary to avoid dismissal on purely technical grounds." *Van Buskirk v. United Group of Companies, Inc.*, 935 F.3d 49, 55 (2d Cir. 2019) (quoting *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997)). Indeed, "unless the record clearly indicates that the complaint could not be saved by any truthful amendment, . . . [the Second

Circuit] generally affords an opportunity for amendment." *Van Buskirk*, 935 F.3d at 55 (quoting *Canedy*, 126 F. 3d at 103) (cleaned up); *see also Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635 (2d Cir. 2005) (granting plaintiff leave to amend pursuant to § 1653 where initial pleading made only "a colorable pleading of subject matter jurisdiction").

Here, facts gleaned from the available record, but omitted from the proposed pleading, tend to suggest that (1) plaintiffs Rourke-Rodriguez and Swamp have applied for aid for the 2025–2026 award year, *see* Musser Aff. ¶¶ 18, 20; and (2) plaintiffs Rourke-Rodriguez and Thompson have been accepted into an educational institution for the 2025–2026 award year, *see* Dkt. No. 19 at 2. Together, these facts, if included in a pleading, would likely satisfy Article III standing requirements.[5] Accordingly, the Court *sua sponte* grants plaintiffs leave to amend their complaint and affirmatively allege standing.

### B. Remaining Motions

Because the Court granted defendants' motion to dismiss for lack of subject matter jurisdiction, the remaining motions (Dkt. Nos. 2, 16, & 18) are denied without prejudice as moot.

## II. CONCLUSION

Therefore, it is

ORDERED that

1. Defendants' Motion to Dismiss (Dkt. No. 12) is GRANTED;

---

[5] Plaintiffs' recent letter motion indicates that Rourke-Rodriguez has been denied an exemption from the updated policy, but plaintiffs do not indicate whether Swamp or Thompson were also denied an exemption. Dkt. No. 19 at 2. Moreover, defendants' response to plaintiffs' motion for leave to file an amended pleading indicates that Thompson may not have applied for federal student aid at all. Dkt. No. 20 at 8.

For the reasons stated herein, a plaintiff who has not applied for federal student aid cannot plausibly allege standing, and any claim brought by a plaintiff who subsequently received an exemption from the updated policy would be rendered moot. Plaintiffs are cautioned not to replead any claims that have become moot or name any plaintiffs who lack standing in any amended pleading.

2. Plaintiffs' Emergency Motion for a Preliminary Injunction (Dkt. No. 2), plaintiffs' Motion for Leave to File an Amended Complaint (Dkt. No. 16), and defendants' Motion to Strike Plaintiffs' Motion for Leave to File an Amended Complaint (Dkt. No. 18) are DENIED without prejudice as moot;

3. Consistent with this Decision and Order, plaintiffs are directed to file an amended pleading within thirty (30) days of the entry of this Order, setting forth facts that affirmatively and plausibly allege standing as to each plaintiff; and

4. The Complaint (Dkt. No. 1) is DISMISSED without prejudice, and with leave to file an amending pleading, solely as set forth herein, which shall serve as the operative pleading in this matter.

The Clerk of the Court is directed to:

    a. Terminate the pending motions (Dkt. Nos. 2, 12, 16, 18); and

    b. Enter a text order directing plaintiffs to file an amended pleading, solely as set forth herein, within thirty (30) days of the entry of this Order.

**IT IS SO ORDERED.**

Dated: October 21, 2025
       Utica, New York.

Anthony J. Brindisi
U.S. District Judge